## 3860.   HEARD *v.* THE STATE.

One occupying the relation of employee to the owner of a livery stable can not, although he works in the stable, be convicted either of keeping intoxicating liquors at a public place, or of keeping such liquors on hand at his place of business, when the uncontradicted evidence discloses affirmatively that the liquors were not his, and wholly fails to show that he aided or abetted the owner in storing the liquors in the stable or had any knowledge that they were there.

DECIDED FEBRUARY 12, 1912.

Misdemeanor; from city court of LaGrange—Judge Harwell. November 2, 1911.

*W. U. Mooty, E. A. Jones,* for plaintiff in error.
*Henry Reeves, solicitor,* contra.

POTTLE, J.　Heard was tried and convicted under an accusation charging him with keeping intoxicating liquors at a public place, and with keeping such liquors on hand at his place of business. Taken most favorably for the State, as it must be, the material evidence was as follows: The accused was a bookkeeper in a livery stable owned by one Scott.　About two months before the warrant was issued, some six or eight casks of whisky and several barrels of beer were found in a cellar under the livery stable and connected with the stable by means of a trap-door.　All of the casks except one were "marked to W. L. Heard, Standing Rock, Alabama." The key to the trap-door was obtained from Scott by the officer who made the search.　Heard could not unlock the trap-door, because he was paralyzed and crippled in both arms.　The whisky was the property of Scott, and the accused had no interest in it.　The whisky was ordered by Scott in Heard's name, and, with his consent, was to be sent to Standing Rock, Alabama, to be conveyed thence to Dadeville, in Alabama, where Scott had some negroes doing grading for a railroad company.　The whisky came to Standing Rock, and Scott instructed Beall, one of his employees, to take the whisky from Standing Rock to Dadeville, and did not know that Beall had brought it to his place of business in West Point, until it was found there by the officer who made the search.　It does not appear how or by what agency the beer reached the cellar of Scott's stable, nor who owned it.　There is no evidence from which it could be inferred that the accused had any knowledge that either the whisky or the beer was in the stable, or that he was connected in any way, directly or indirectly, with having it brought there.

Manifestly the conviction can not stand.　Granting that Scott knew the liquor was there, guilty knowledge of the employer can not be imputed to the employee.　If the evidence had shown that the accused had confederated with Scott or abetted him in the illegal act, he would be guilty.　In this case proof of knowledge by Heard that Scott was keeping the whisky in his place of business, coupled with the fact that the accused allowed the use of his name to bring the liquors to a near-by town in Alabama, might authorize a finding that he was so connected with the illegal act as to make

him guilty. But mere consent, without more, to have the liquors shipped in his name to another State does not make the accused guilty. The conviction rests wholly upon suspicion, and must be set aside. This case, upon its facts, differs from *Toles* v. *State,* ante, 444 (73 S. E. 597), in that in the latter case there were circumstances authorizing a finding that Toles aided and abetted the employer in the illegal act.          *Judgment reversed.*